IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENNIS PROCIUK, in his capacity as the successor supervised Administrator of The Estate of Theodore Prociuk, Sr., <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF SCHILLER PARK, et al., <br><br> Defendants. | No. 21-cv-05921 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

The Estate of Theodore Prociuk, Sr. ("Estate") has, for several years, been attempting to sell property it owns in the Village of Schiller Park, Illinois ("Village"). However, Plaintiff Dennis Prociuk, in his capacity as the successor supervised Administrator of the Estate, claims that the Estate's efforts to sell the property have been thwarted by the actions of the Village, the Village's Zoning, Planning & Appeals Commission ("Zoning Commission"), the Village's Board of Trustees, and Village Planner Scott Bernacki (collectively, "Defendants"). Therefore, Plaintiff has brought the present action alleging that Defendants' conduct violates the Takings Clauses of the U.S. and Illinois constitutions, and the Due Process Clause of the U.S. Constitution. Before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 17.) For the reasons that follow, Defendants' motion is granted.

### BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to Plaintiff as the non-moving party.

*Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

The Estate was opened under the supervision of the Probate Division of the Circuit Court of Cook County following the death of Theodore Prociuk, Sr. in November 2005. (FAC ¶¶ 6, 12, Dkt. No. 3-3.) Among the Estate's assets are 2.8 acres of real estate located in the Village ("Property"). (*Id.* ¶¶ 4–5.) The Property consists of two parcels of land—one containing most of a 61,975 square foot industrial building and the second containing a small portion of the industrial building and a surface parking lot. (*Id.* ¶ 4.)

The Estate's original supervised Administrator did not perform his duties with diligence. (*Id.* ¶¶ 13–16.) As a result, the Estate was unable to pay its taxes, and the Property became encumbered by liens held by the U.S. Treasury for unpaid federal estate taxes and by Cook County for unpaid property taxes. (*Id.* ¶ 16.) On June 4, 2018, Plaintiff was appointed to take over as the Estate's supervised Administrator. (*Id.* ¶ 20.) Shortly thereafter, the original Administrator provided Plaintiff with a check for $13,075.57, which represented the Estate's remaining funds for its administration. (*Id.*)

By the time Plaintiff took over as the Estate's Administrator, the Property was worth substantially less than the amount of the tax liens attached to it. (*Id.* ¶ 18.) Consequently, it was not economically viable for a buyer to purchase the Property unless the purchase was structured in such a way as to resolve the liens. (*Id.*) To make the Property saleable, the Estate proposed a conduit sale under which the Estate would first transfer title to the Property to the Cook County Land Bank Authority ("Land Bank").[1] (*Id.* ¶ 24.) The Land Bank would then seek to sell the

---

[1] The FAC provides little background information about the Land Bank. According to its website, the Land Bank "is a unit of Cook County government" that acquires property throughout Cook County with the goal of "promot[ing] redevelopment and reuse of vacant, abandoned, foreclosed or tax-delinquent properties." *About Us*, Cook County Land Bank Authority, http://www.cookcountylandbank.org/about/about-us/ (last

Property to a private buyer free and clear of the liens and use the sale proceeds to pay the Property's lienholders. (*Id.*) In July 2018, the Estate began efforts to effectuate the proposed conduit sale and eventually found a developer who would make a suitable buyer. (*Id.* ¶¶ 26–27.)

For the developer's purchase to be worthwhile, the developer and the Estate needed to ensure that the developer could put the Property to a profitable use that would also be permitted by the Village's zoning code. (*Id.* ¶¶ 28–32.) Thus, the developer and the Estate proposed that the Property be used as a valet parking facility serving the nearby O'Hare International Airport. (*Id.* ¶ 32.) Under the Village's zoning code, such use was not an automatically permitted use in the Property's zoning district but instead was a conditional use that required the Village's approval. (*Id.* ¶¶ 33, 42.) Accordingly, the Estate submitted a petition to the Zoning Commission for approval to use the Property as a parking lot for private passenger vehicles. (*Id.* ¶ 33.)

On November 13, 2019, the Zoning Commission held a public hearing regarding the Estate's conditional-use petition. (*Id.* ¶ 34.) During the hearing, the Zoning Commission heard no objections to the Estate's petition. (*Id.* ¶ 35.) But in advance of the hearing, the Village Planner, Scott Bernacki,[2] submitted a memorandum to the Zoning Commission recommending that the Estate's conditional-use petition be denied. (*Id.* ¶ 36.) In his memorandum, Bernacki predicted that if a parking lot were permitted on the Property, it would substantially increase the traffic in the area. (*Id.* ¶ 37.) The Estate strongly disputes the accuracy of the memorandum's prediction regarding the traffic that a parking lot at the Property would generate but, because it was not

---

visited Nov. 10, 2022). To that end, the Land Bank will purchase a property and "extinguish delinquent taxes and liens as permitted by law . . . with the intent of preparing [the] property for conveyance back to 'the market.'" *Id.*

[2] Bernacki is named as a Defendant in the FAC. However, in response to Defendants' argument in their opening brief that the claims against Bernacki in his official capacity as Village Planner are duplicative of the claims against the Village, Plaintiff has moved in his response brief to voluntarily dismiss Bernacki as a Defendant, without prejudice. (Pl.'s Opp'n at 11–12, Dkt. No. 21.)

aware of Bernacki's memorandum prior to the public hearing, the Estate had no opportunity to meaningfully respond to it at the hearing. (*Id.* ¶¶ 38–41, 44.) Prior to the Zoning Commission's vote on the Estate's petition, several members of the Zoning Commission stated that their vote would be informed largely by traffic considerations. (*Id.* ¶ 43.) Ultimately, the Zoning Commission's vote on the Estate's petition was evenly split, which amounted to a recommendation that the petition be denied. (*Id.* ¶ 45.) On December 5, 2019, the Village's Board of Trustees adopted the Zoning Commission's recommendation and voted unanimously to deny the Estate its requested conditional use. (*Id.* ¶ 46.)

Meanwhile, the Estate also sought the Village's endorsement of the proposed conduit sale of the Property. (*Id.* ¶ 49.) Although the Village had no formal role in any sale of the Property, the Land Bank considered support from the local government as a critical factor when deciding whether to move forward with a transaction. (*Id.* ¶ 25.) Thus, the Estate reached out to the Village on multiple occasions requesting that it provide some expression of support for the conduit sale. (*Id.* ¶¶ 50–53.) Ultimately, the Village responded to the Estate's entreaties by way of a December 13, 2019 email from Bernacki, in which he stated that "[t]he Village has no interest in any property sales between the Estate and the Land Bank. The Village has no interest in taking title to the property." (*Id.* ¶ 53.)

Lacking the Village's express support, the Estate was unable to move forward with the conduit sale of the Property. (*Id.* ¶¶ 54, 58.) For that reason, the Estate instead decided to work on cleaning up and repairing the Property. (*Id.* ¶ 58.) Yet the Estate claims that its efforts have been hindered by the Village's issuance of multiple zoning code violations against both the Estate and a tenant that rented space at the Property. (*Id.* ¶¶ 60–65.) In particular, the Village cited the Estate and its tenant for operating an unlicensed business at the Property. (*Id.* ¶¶ 61–62.) Moreover, the

4

Village issued multiple code violations against the Estate for not repairing numerous structures on the Property without ever specifying the defects giving rise to the citations. (*Id.* ¶ 65.) Even after the probate court ordered the Estate to obtain from the Village a list of repairs necessary to rehabilitate the Property, the Village has refused to provide a list of the specific issues at the Property. (*Id.* ¶¶ 67–68.)

## DISCUSSION

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Here, Plaintiff's three-count FAC asserts claims for violations of the Takings Clauses of the U.S. and Illinois constitutions and alleges that Defendants violated the Estate's rights to procedural and substantive due process under the Fourteenth Amendment to the U.S. Constitution.[3] Defendants contend that none of Plaintiff's claims are viable and therefore the FAC must be dismissed.

### I. Takings Claims

According to Plaintiff, Defendants' actions in denying the Estate its requested conditional use, withholding support for the conduit sale, and issuing numerous code violations, taken together, amount to a taking of the Property in violation of the Takings Clause of the Fifth

---

[3] Although the FAC never references 42 U.S.C. § 1983, the Court construes Plaintiff's claims under the U.S. Constitution as brought pursuant to that statute.

5

Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, as well as the analogous provision of the Illinois constitution. The Fifth Amendment's Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Illinois constitution provides similar but greater protection to landowners, stating that "[p]rivate property shall not be taken or damaged for public use without just compensation." Ill. Const. art. I, § 15. Where a plaintiff alleges a taking of private property as opposed to damage to the property, a claim under Illinois's constitution is subject to the same analysis as a Fifth Amendment takings claim. *Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1235–36 (Ill. 2016).

By its plain text, the Fifth Amendment's Takings Clause "is not designed to limit the governmental interference with property rights *per se*, but rather to secure **compensation** in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 315 (1987)). While the "paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property," the Supreme Court has recognized that compensation will also be required for "regulatory takings." *Id.* at 537. A regulatory taking refers to "a restriction on the use of property that [goes] 'too far.'" *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015) (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). To plead a regulatory taking, a plaintiff must plausibly allege that the challenged government action "deprived them of all or a significant part of the economically beneficial use of the property." *Nowlin v. Pritzker*, 34 F.4th 629, 634 (7th Cir. 2022).

Here, Plaintiff alleges that Defendants' conduct, considered together, operated to render the Property valueless and therefore amounted to a taking. (*See* FAC ¶¶ 69, 72.) Plaintiff's takings

6

claims are fatally flawed, however, because the FAC's allegations make clear that the harm to the Property's value was caused not by any action of Defendants but by the mismanagement of the Estate's original Administrator. *Cf. Guth v. Tazewell County*, 698 F.3d 580, 587 (7th Cir. 2012) (explaining that the plaintiff failed to establish a County Board's liability for lost property value where the property "lost its value for reasons unrelated to anything the Board had ever done"). By the time Plaintiff took over as Administrator, the Property was encumbered by tax liens that were worth more than the Property, thus making it unmarketable. Put differently, the Property was already valueless to the Estate well before Defendants took any action challenged here. Defendants only became involved after the Estate devised a transaction that would enable it to salvage some value from the Property dependent on Defendants granting the Estate's requested conditional use and expressing support for the sale. While Defendants' actions may have prevented the Estate from maximizing its profits from a conduit sale of the Property, that does not mean that they effected a taking. *See, e.g.*, *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978) ("Zoning laws . . . have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property."); *Mogan v. City of Chicago*, No. 21 C 1846, 2022 WL 4181783, at *5 (N.D. Ill. Sept. 12, 2022) ("[L]oss of a more profitable use of the property does not constitute a taking."); *Stop v. Weiss*, No. 4:21-cv-00177-RLM-DML, 2022 WL 2817323, at *4 (S.D. Ind. July 19, 2022) ("That [the plaintiff] can't use its property as a parking lot because it's not in compliance with the . . . Municipal Code isn't the type of economic impact that amounts to a taking.").

      Defendants' denial of the Estate's requested conditional use likely diminished the value of the Property somewhat. However, it cannot be reasonably inferred from the FAC's allegations that the Estate was deprived of a significant part of the economically beneficial use of the

Property. Indeed, the FAC itself alleges that the Estate could make numerous uses of the Property without need for Defendants' approval. (FAC ¶ 42 (listing automatically permitted uses of the Property, including "restaurants serving alcohol, adult book stores, adult entertainment cabarets, adult mini motion picture theaters, adult motion picture theaters, escort agencies, fortune tellers, massage parlors, tattoo parlors, and medical cannabis cultivation centers").) While such uses may not have been the Estate's preferred uses for the Property, that such uses remain available demonstrates that Defendants' denial of the conditional use was not a taking. *Nowlin*, 34 F.4th at 635 ("That such uses would not have been [the plaintiffs'] preferred or most profitable uses does not mean that the [challenged] orders effected a regulatory taking."); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1045 (N.D. Ill. 2018) ("[T]hat the defendants have denied two uses does not mean that the property is now useless.").[4]

Nor does Defendants' failure to expressly endorse the conduit sale or their issuance of code violations bolster Plaintiff's claim of a taking. As to the conduit sale, Defendants had no formal role in the proposed transaction such that their support or lack thereof can be deemed a governmental order or regulation. Rather, Defendants' affirmative support for the conduit sale was simply a factor considered by the Land Bank in deciding whether to proceed with the sale. As alleged in the FAC, Defendants' affirmative support was such an important consideration to the Land Bank that it was "***in essence*** a requirement for the Land Bank to engage in such a sale." (FAC ¶ 25 (emphasis added).) Nonetheless, insofar as Defendants' support was necessary for the

---

[4] The FAC alleges that Bernacki rejected two other proposed uses for the Property. (FAC ¶¶ 29–31.) But the FAC does not claim that Bernacki was the final decisionmaker and does not allege that the Estate ever submitted a petition to the Zoning Commission for those proposed uses. Regardless, even if Bernacki's rejections could be construed as official decisions by the Village, the denials of the two additional use requests still do not establish a taking given the numerous other permitted uses for the Property. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013) ("[I]t is inappropriate to consider only the loss due to prohibited uses, without also considering 'the many profitable uses to which the property could still be put.'" (internal quotation marks omitted)).

8

conduit sale, it was the Land Bank's own self-imposed requirement; legally, there was nothing preventing the Land Bank from proceeding with the sale even without Defendants' approval. Finally, to the extent Defendants' issuance of various code violations against the Property could constitute a taking, the FAC fails to allege that any monetary penalties were ever imposed as a result of those violations such that the Court might infer that they significantly deprived the Property of economically beneficial use. *See Home Builders Ass'n of Greater Chi. v. City of Chicago*, 213 F. Supp. 3d 1019, 1029–30 (N.D. Ill. 2016) (finding that the plaintiff failed to allege a taking where the complaint included no allegations quantifying the economic impact of the challenged regulation).

At bottom, that the Estate saw no value in undertaking one of the many allowable uses of the Property was a consequence of the "legal and financial messes" left behind by the Estate's original Administrator. (FAC ¶¶ 19, 21.) That Defendants' actions hindered the Estate's efforts to resolve those messes does not mean that Defendants must take full blame for rendering the Property useless to the Estate, or otherwise elevate their conduct into a taking under the U.S. or Illinois constitutions. Of course, as discussed above, the Illinois constitution also applies to governmental action that damages private property. However, "Illinois courts have long required a plaintiff seeking compensation for a governmental damaging of his property rights to demonstrate 'an actual physical invasion by the government onto his property.'" *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998) (quoting *Forest Pres. Dist. v. W. Suburban Bank*, 641 N.E.2d 493, 497 (Ill. 1994)). Such a physical intrusion is not alleged in the FAC. Thus, because the FAC fails to plead that Defendants either took or damaged the Property, Plaintiff's takings claims are dismissed.

## II. Procedural Due Process

Plaintiff next claims that Defendants violated the Estate's right to procedural due process under the Fourteenth Amendment both by denying it a fair hearing on its requested conditional use and by taking actions that obstructed the Estate's efforts to sell the Property. To find a valid procedural due process claim, a court must first "determine whether the plaintiff was deprived of a protected interest" and, if so, it then "must determine what process is due." *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004).

The Court begins by addressing Plaintiff's contention that the Zoning Commission denied the Estate procedural due process when it denied the Estate's conditional-use petition. Specifically, Plaintiff faults the Zoning Commission for basing its decision on statements in Bernacki's memorandum without giving the Estate the opportunity to cross-examine Bernacki or rebut his claim that a commercial parking lot at the Property would increase traffic in the area. In alleging such a claim, Plaintiff must contend with the Seventh Circuit precedents that "establish difficult terrain for a procedural due process claim to proceed" in the zoning context. *Pittsfield Dev., LLC v. City of Chicago*, No. 17 C 1951, 2017 WL 5891223, at *9 (N.D. Ill. Nov. 28, 2017). The Seventh Circuit has held that "the procedures 'due' in zoning cases are minimal." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994). And where, as here, "zoning decisions are confided to a legislative rather than a judicial body . . . the affected persons have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process." *Ind. Land Co. v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004).

It is readily apparent from the FAC that the Estate was afforded far more than the "scant process . . . that is 'due' in zoning cases." *River Park*, 23 F.3d at 167. The Zoning Commission held a public hearing on the Estate's conditional-use petition (FAC ¶ 34), and the Estate does not

10

claim that it received insufficient notice of that hearing or was denied the opportunity to attend and participate in the hearing. Rather, Plaintiff asserts only that the Estate was not given a sufficient opportunity to be heard with respect to the issues raised in Bernacki's memorandum. Yet municipalities are given considerable leeway in the procedures they may use to make zoning decisions. "[T]he idea in zoning cases is that the due process clause permits municipalities to use political methods to decide, so that the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts." *River Park*, 23 F.3d at 167. Even blatantly political machinations do not run afoul of the due process clause. *See Dyson*, 306 F. Supp. 3d at 1044 (explaining that the plaintiff's zoning application was properly "subject to the (alleged) political machinations of the Calumet City government"); *Standard Bank & Tr. Co. v. Vill. of Orlando Hills*, 891 F. Supp. 446, 451 (N.D. Ill. 1995) ("Municipalities may make zoning decisions by utilizing the political process—'making a political decision in a political fashion,' even 'employing procedural maneuvers' that prevent the question from ever being resolved by the local government." (quoting *River Park*, 23 F.3d at 167)). While the Estate may have reasonably wanted the chance to rebut Bernacki's claims, it had no due process right to such an opportunity.

Separately, Plaintiff asserts that Defendants violated the Estate's procedural due process rights by taking actions that impaired the Estate's ability to sell the Property. In particular, Plaintiff cites Defendants' withholding of support for the proposed conduit sale, their issuance of unjustified code violations, and their refusal to provide a list of the repairs needed to remedy the Property's various code violations. Beginning with the code-violation issues, the Court is not convinced that there was any property interest deprivation whatsoever. As discussed above, the FAC does not allege that the code violations actually resulted in the imposition of any monetary penalty. A citation is not itself a fine, and a "plaintiff cannot be deprived of property without due

11

process of law before that plaintiff is deprived of property." *Tucker v. City of Chicago*, 907 F.3d 487, 492 (7th Cir. 2018).

Even if the Court were to interpret the FAC's references to "code violations" as the equivalent of fines, Plaintiff provides minimal details as to what process was due or the nature of Defendants' alleged violations. Plaintiff does not appear to allege that Defendants' procedures for imposing code violations themselves are deficient. *See Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010) ("In evaluating what process satisfies the Due Process Clause . . . the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." (internal quotation marks omitted)). Thus, Plaintiff's claim must be that Defendants failed to follow their own procedures before issuing the code violations. To state a due process claim where "a state official deprives a person of his property through a random, unauthorized act that departs from state law, the federal due-process guarantee requires only that the state provide an adequate postdeprivation remedy." *Vargas v. Cook Cnty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020). Yet the FAC contains no allegations regarding the availability and sufficiency of a postdeprivation remedy. Apparently, such remedy existed and was sufficient, as Plaintiff stated in a previous filing before this Court that he brought a lawsuit in state court challenging the code violations, which ultimately led to the Village vacating those violations. (Pl.'s Mot. to Withdraw Mot. to Remand ¶ 4, Dkt. No. 14); *see CIMA Devs. Ltd. P'ship v. City of West Chicago*, No. 19 C 2193, 2021 WL 736224, at *2 (N.D. Ill. Feb. 25, 2021) ("Plaintiffs took advantage of a meaningful post-deprivation state court remedy when they successfully challenged the ALJ's decision [in state court].").

12

Similarly, Plaintiff fails to allege that Defendants' refusal to support the conduit sale amounted to a deprivation of a property interest. To plead a property interest, Plaintiff had to show that the Estate had a "legitimate claim of entitlement" to Defendants' support. *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995). Such a claim of entitlement must be "one that is legally enforceable—one based on statutes or regulations containing 'explicitly mandatory language' that links 'specified substantive predicates' to prescribed outcomes." *Id.* (quoting *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989)). Here, Plaintiff does not allege that there was any established process for obtaining Defendants' endorsement for the conduit sale. Rather, the FAC strongly suggests that the decision to make any statement as to the proposed conduit sale was entirely within Defendants' discretion. *See Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773–74 (7th Cir. 2021) ("A protected property interest exists where substantive criteria clearly limit discretion such that the plaintiff cannot be denied the interest unless specific conditions are met." (internal quotation marks omitted)).

Plaintiff argues that the relevant property interest is not Defendants' approval of the conduit sale but rather the Estate's general interest in selling the Property. Even accepting that the relevant property interest is the Estate's right to transfer the Property, the Court does not see how Defendants deprived the Estate of that interest. As discussed above, it was the Land Bank that insisted on Defendants' support for the sale, whereas Defendants simply stayed neutral, stating that the Village "ha[d] no interest in any property sales between the Estate and the Land Bank." (FAC ¶¶ 25, 53.) Plaintiff cannot claim to have been denied procedural due process where Defendants simply "refused to accede to a demand by a private party for a thing . . . to which that private party was not entitled." *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 634 (7th Cir. 2016).

In sum, the Court finds that the FAC fails to allege any action on the part of Defendants that deprived the Estate of a protected property interest. For that reason, Plaintiff's procedural due process claims are dismissed.

### III.     Substantive Due Process

Finally, Plaintiff alleges that Defendants' actions violated the Estate's substantive due process rights. "A government entity must have exercised its power without reasonable justification in a manner that shocks the conscience in order for a plaintiff to recover on substantive due process grounds." *Bettendorf v. St. Croix County*, 631 F.3d 421, 426 (7th Cir. 2011) (internal quotation marks omitted). Substantive due process does not afford "a blanket protection against unjustifiable interferences with property . . . . [a]nd it does not confer on federal courts a license to act as zoning boards of appeal." *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008) (internal quotation marks and citations omitted). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Id.* (internal quotation marks omitted).

Where, as here, "the right infringed upon is an interest in property . . . , the property owner must first establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation before a court will consider whether the interference with property is arbitrary or irrational." *Id.* at 1001. But given that the Court has already dismissed Plaintiff's takings and procedural due process claims, no independent constitutional violation has been pleaded. *Dyson*, 306 F. Supp. 3d at 1043 ("[T]he Court is dismissing [the plaintiff's] procedural due process, takings, and equal protection claims, so she cannot point to an

14

independent constitutional violation."). Moreover, as discussed above, nothing in the FAC demonstrates the inadequacy of the available state remedies; to the contrary, Plaintiff appears to have successfully availed himself of such remedies. *CIMA Devs.*, 2021 WL 736224, at *2 ("[P]laintiffs' use of the post-deprivation remedy cured any substantive due process deprivation."). Accordingly, Plaintiff's substantive due process claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 17) is granted and Plaintiff's FAC is dismissed. The dismissal is without prejudice to Plaintiff filing a further amended complaint that states a viable claim, if he is able to do so consistent with the requirements of Federal Rule of Civil Procedure 11.

Dated: November 14, 2022

ENTERED:

_____
Andrea R. Wood
United States District Judge